UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HONEEDEW INVESTING LLC,

                    Appellant,

          - against -

BARBARA J. ABADI, *et al.*,

                    Appellees.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-3132 (PKC)

PAMELA K. CHEN, United States District Judge:

Appellant Honeedew Investing LLC moves pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 8007 to stay the execution of an Order[1] entered by the United States Bankruptcy Court for the Eastern District of New York authorizing the Trustee to "consummate a sale of the real property located at 34/47 Calle Parera, Unit 2, 1st Floor, Registration No. 20-2703/2, Buenos Aires, Argentina (the 'Property')." (Sale Order, Dkt. 1, at ECF[2] 4.) The Court assumes the parties' familiarity with the underlying proceedings and relevant facts, which the Court recites only as necessary to explain its decision to deny the Motion to Stay.

---

[1] The full title of the order is Order Pursuant to 11 U.S.C. §§ 105(A), 363(B), (F), (K) and (M), and 365, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure: (i) Confirming the Results of the Process to Sell the Debtors' Real Property; (ii) Authorizing the Trustee to Consummate a Sale of the Real Property with the Designated Purchase Free and Clear of all Liens, Claims and Encumbrances; (iii) Authorizing the Trustee to make Certain Disbursements in Connection with or following the Closing on the Sale of the Real Property; and (iv) Granting Related Relief. The Court refers to the order as the "Sale Order."

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

**BACKGROUND**

Honeedew Investing LLC ("Honeedew") is a creditor in the bankruptcy proceedings of Debtors Carlos and Barbara Abadi (the "Abadis"). In May 2017, Honeedew obtained a New York State Court money judgment against the Abadis. (Declaration of Kathleen M. Aiello ("Aiello Decl."), Dkt. 14, ¶ 21.) In August 2017, Honeedew commenced an *exequatur* proceeding in Argentina to recognize and enforce this judgment. (Mem. in Supp. Stay ("Stay Mot."), Dkt. 6-1, at 5; Aiello Decl., Dkt. 14, ¶ 34.) According to Honeedew, this filing created an embargo on the Property. (Aiello Decl., Dkt. 14, ¶ 34; Stay Mot., Dkt. 6-1, at 6.) In July 2022, Honeedew commenced a second *exequatur* proceeding, which created an "attachment or embargo" against the Property. (Aiello Decl., Dkt. 14, ¶ 35.)

Barbara Abadi and Carlos Abadi filed separately for bankruptcy in July 2024 and August 2024, respectively. (*Id.* ¶¶ 6–7.) On August 8, 2024, Honeedew filed a partially secured claim against Barbara Abadi, (*see* 08/08/2024 Claim, Dkt. 14-4, at ECF 3, 7), only to amend the claim to be unsecured on August 21, 2024, (08/21/2025 Claim, Dkt. 14-5, at ECF 3). On September 18, 2024, Honeedew filed an unsecured claim against Carlos Abadi. (09/18/2024 Claim, Dkt. 14-6.) On September 19, 2024, Honeedew elected Eric Huebscher as Trustee at a creditors meeting at which only Honeedew was present. (Aiello Decl., Dkt. 14, ¶ 13 (electing Huebscher to Barbara Abadi's case on September 16, 2024, and to Carlos Abadi's case on September 19, 2024); Report Certifying Election of Trustee, Dkt. 14-2, at 6.) On November 1, 2024, the Abadis' bankruptcy cases were consolidated to be jointly administered. (Aiello Decl., Dkt. 14, ¶ 11.)

In December 2024, the Trustee initiated the process to sell the Property, including by proposing a set of Sale Procedures, which the Bankruptcy Court thereafter adopted. (*Id.* ¶¶ 54–58.) The Procedures were amended in April 2025. (*See* Am. Sale Procedures, Dkts. 7-6, 7-7 (adopted April 2025).) In October 2025, the Trustee accepted an offer on the Property from Emilio

Noseda (the "Purchaser" or "Noseda") for $900,000. (Aiello Decl., Dkt. 14, ¶ 66.) That agreement was signed and sent to the creditors, along with notice of a sale confirmation hearing. (Notice of Designated Purchaser and Sale Confirmation Hr'g, Dkt. 6-8.)

On December 24, 2025, Honeedew again amended its claims, now stating that it was a partially secured creditor. (12/24/2025 Claim, Dkts. 14-7, 14-8.) Thereafter, on February 9, 2026, the Trustee sought to reclassify Honeedew's claims as unsecured. (Aiello Decl., Dkt. 14, ¶ 27.) After responsive briefing and oral argument, the Bankruptcy Court held, on March 10, 2026, that Honeedew's claims should be reclassified as unsecured on the basis of waiver and equitable estoppel. (*Id.* ¶¶ 28–30; *see* 03/10/2026 Hr'g Tr., Dkt. 7-24, at 6–45.) The Bankruptcy Court reiterated this finding on May 7, 2026, (05/07/2026 Hr'g Tr., Dkt. 7-25, at 10–12, 14–15), and issued a formal decision to that effect on May 21, 2026 (the "Memorandum Decision"), (Dkt. 7-2).

The Bankruptcy Court held the sale confirmation hearings on May 8 and May 11, 2026, in which, *inter alia*, the Trustee and the broker agent, Carolina Dumais, testified. (*See generally* 05/08/2026 Hr'g Tr., Dkt. 7-26; 05/11/2026 Hr'g Tr., Dkt. 7-27.) The Bankruptcy Court orally confirmed the sale of the Property to Noseda at the hearings, holding:

> There are several bases for the objection including that the [T]rustee had not properly marketed the [P]roperty, had not obtained the highest and best price, and the sale was not a proper exercise of . . . business judgment. Additionally, Honeedew asserted that its claim was secured by an interest in the real property to be sold. Therefore, the [T]rustee could not sell the [P]roperty free and clear of liens because the purchase price did not exceed the amount of Honeedew's claim. The [T]rustee objected to Honeedew's proof of claim asserting the claim was not a secured claim. The Court previously determined that the [T]rustee was correct and determined that Honeedew, to the extent it had a security interest, had waived that security interest. . . .
>
> In this case, the [T]rustee has satisfied his burden of showing that the sale of the [P]roperty in Argentina to Mr. No[s]eda for $900,000 is an exercise of sound

> business judgment.  First, the [T]rustee hired an experienced broker to market the [P]roperty.  The [T]rustee hired local counsel.  The [P]roperty was marketed, and the [T]rustee obtained only one offer for the purchase of the . . . [P]roperty from Mr. No[s]eda for $900,000.  Although the [T]rustee could continue to market the [P]roperty with the hope of obtaining . . . another offer, the [T]rustee testified to the fact that continuing to market would not be prudent because the condominium association [of the Property] may auction the [P]roperty and the condo's auction would not result in obtaining the highest and best price for the [P]roperty.  In addition, Mr. No[s]eda, the purchaser, is getting, I think the word was, anxious and may actually walk away from the offer unless the sale is approved. . . .

> The [T]rustee has testified that the sale process was conducted . . . at arm's length without collusion.  I would note that the record indicates that Honeedew is not alleging that the [T]rustee engaged in anything untoward.  Additionally, there is no - no evidence in the record that the sale is not at arm's length.  There is no – there is nothing in the record indicating fraud, collusion between the purchaser and any other bidder or the [T]rustee.  The fact that the purchaser is not here to testify is of no moment. . . .

(*See* 05/11/2026 Hr'g Tr., Dkt. 7-27, at 79–86; *see also* Sale Order, Dkt. 1.)  After the Bankruptcy Court announced its decision, Honeedew asked if it would "consider a stay of any order under [11 U.S.C. §] 363(m)" ("Section 363").  (*See* 05/11/2026 Hr'g Tr., Dkt. 7-27, at 87.)  The Bankruptcy Court declined, although it stated that Honeedew was "free to make an application" for an administrative 14-day stay.  (*Id.*)  Honeedew did not do so.

Honeedew, however, on May 26, 2026, appealed both the Bankruptcy Court's Sale Order and the Memorandum Decision, the latter of which in an appeal separate from this one.  *See Honeedew Investing LLC v. Abadi*, No. 26-CV-3131 (PKC) (E.D.N.Y. May 26, 2026).[3]  Three days later, on May 29, 2026, Honeedew filed the instant emergency Motion in this appeal seeking to stay the Sale Order pending appeal.  (*See* Dkt. 3.)

---

[3] As indicated, Honeedew has filed two appeals relating to the Abadi bankruptcy, Nos. 26-CV-3132 and 26-CV-3131, which, as discussed below, are being consolidated, as requested by Honeedew.

**DISCUSSION**

A party may move to stay a bankruptcy court's judgment or order pending appeal. Fed. R. Bankr. P. 8007(a)(1). Rule 8007 does not articulate the standard for granting a stay pending appeal. *In re Est. of Simpson-Manigault*, No. 25-CV-8199 (JGLC), 2026 WL 1506351, at *1 (S.D.N.Y. May 29, 2026). However, "[c]ourts within the Second Circuit have followed the same standard used for stays of district court orders pending appeals to the circuit court under Federal Rule of Appellate Procedure 8(a)(1)(A) ('Rule 8A'), in large part because Bankruptcy Rule 800[7] is directly adapted from Rule 8A." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007). Courts consider four factors in determining whether to issue a stay: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Id.* A stay pending appeal is the "exception, not the rule." *In re Carrington*, 698 F. Supp. 3d 659, 661 (S.D.N.Y. 2023) (quoting *In re LATAM Airlines Grp. S.A.*, No. 20-BK-11254, 2022 WL 2811904, at *2 (Bankr. S.D.N.Y. July 16, 2022)). The burden rests with the movant to demonstrate that a stay should be granted. *29 Brooklyn, LLC v. Chesley*, No. 15-CV-5180 (ARR), 2015 WL 9255549, at *2 (E.D.N.Y. Dec. 16, 2015). For the following reasons, Honeedew has not met that burden here.

**I.    Consolidation**

As a threshold matter, although this appeal concerns the Bankruptcy Court's Sale Order, that Order relied upon findings made in the Bankruptcy Court's Memorandum Decision, and so do Honeedew's arguments in favor of a stay. The Memorandum Decision is the subject of a separate appeal, *Honeedew Investing LLC v. Abadi*, No. 26-CV-3131 (PKC) (E.D.N.Y. May 26, 2026), and Honeedew now requests consolidation of the cases. The Court finds that Honeedew's

appeals contain related issues of fact and law, Fed. R. Civ. P. 42(a), and that consolidation would "expedite trial and eliminate unnecessary repetition and confusion," *Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 81 (E.D.N.Y. 2011) (quoting *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984)); *see also id.* (explaining that consolidation "should be prudently employed as 'a valuable and important tool of judicial administration'" (citation omitted)).[4]  The Court notes that Honeedew does not state that its request for a stay pending appeal extends to the Memorandum Decision, nor does Honeedew provide any authority as to whether the Court may, in determining a substantial possibility of success on appeal, look to the Memorandum Decision's merits as well.  In spite of this concerning omission by Honeedew, the Court will apply its analysis to the Memorandum Decision as well, because it finds that Honeedew's request for a stay pending appeal would fail even in doing so.

**II.      Denial of the Stay Could Result in Irreparable Injury to Honeedew**

Honeedew claims that failure to stay the Sale Order will result in irreparable injury because it would result in the "loss of an appellate remedy." (Stay Mot., Dkt. 6-1, at 22.)  It is true that after a sale is consummated, Section 363(m) "limits appellate jurisdiction over unstayed sale orders to the issue of good faith," rendering other challenges to a sale order moot.  *See In re Gucci*, 105 F.3d 837, 839–40 (2d Cir. 1997); *Xu v. Messer as Tr. of 41-23 Haight St. Realty, Inc.*, No. 20-CV-3215 (PKC), 2021 WL 4462805, at *10 (E.D.N.Y. Sep. 29, 2021) (collecting cases).  However, "a majority of courts have found that the risk that an appeal may become moot in the absence of a stay does not constitute irreparable harm[.]"  *See In re CPJFK, LLC*, 496 B.R. 65, 69 (Bankr.

---

[4] The Court also consolidates *Honeedew Investing LLC v. Abadi*, No. 26-CV-1908 (PKC) (E.D.N.Y. Mar. 31, 2026).  (*See* Stay Mot., Dkt. 6-1, at 26.)  The Clerk of Court is respectfully directed to terminate the docket numbers 26-CV-3131 and 26-CV-1908.  All parties shall file only in the docket under 26-CV-3132.

E.D.N.Y. 2011); *In re MF Glob., Inc.*, No. 11-AP-2790 (MG), 2012 WL 5386101, at *2–3 (Bankr. S.D.N.Y. Nov. 1, 2012) (same); *In re Mott*, No. 25-BK-10110 (SHL), 2025 WL 2348890, at *4 (Bankr. S.D.N.Y. Aug. 13, 2025) (same); *but see In re Adelphia*, 361 B.R. at 351–52 (adopting opposite stance).

However, the Court finds that Honeedew's injury is irreparable to the extent that it is unlikely to be fully compensable by monetary damages. *See In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019) ("An injury that may be fully remedied by monetary damages does not constitute irreparable harm." (quoting *In re 473 W. End Realty Corp.*, 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014))). The Court disagrees with the Trustee's contention that any injury sustained by Honeedew would not be compensable because the Sale Order "expressly provides that the net sale proceeds will be held (and not distributed) by Appellee until the Claim Objection Appeal is decided." (Opp'n to Stay Mot., Dkt. 13, at 31.)[5] The Trustee seems to rely on language in the Sale Order providing that "[i]f a claim that is purportedly secured by a Lien on the Property is in dispute as of closing title to the Property (the 'Closing'), then the Trustee shall hold the Sale Proceeds, net of any distributions authorized by the Bankruptcy Court to be paid by the Trustee at the Closing, in the bank account for the Debtors' estates pending entry of a Bankruptcy Court order allowing or disallowing such claim." (Sale Order, Dkt. 1, at ECF 12.) The Sale Order further provides that "Lienholders whose Liens on the Property or claims are disputed shall not receive a distribution on account of their alleged Liens until the disputes are resolved." (*Id.* at ECF 15–16.)

_____

[5] An email from the Trustee, which Honeedew attaches in its Motion to Supplement its Motion to Stay, (Dkt. 11), also states that the "Trustee will hold the net proceeds pending the outcome of Honeedew's appeals," (*id.* at ECF 3). Although the Court grants Honeedew's Motion to Supplement, the alleged "waivers" Honeedew attaches to it as supplementation are in Spanish and not translated. The Court therefore cannot review them to confirm the accuracy of Honeedew's characterizations of the documents.

But this language does not discuss holding the sale proceeds pending appeal of the Sale Order itself (as opposed to a disputed "claim" to proceeds from the sale), and the Bankruptcy Court *did* enter a decision seemingly resolving Honeedew's claim dispute.  (*See* Memorandum Decision, Dkt. 7-2.)

Ultimately though, even assuming Honeedew has made a showing of irreparable harm, this single factor does not automatically justify a stay—the Court must also weigh this harm against the other three factors, which counsel against granting a stay.  *See Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017) (summary order) (noting that, while the appellant "likely faces irreparable harm without a stay, this factor is outweighed by the others").

## III.    Granting a Stay Will Result in Substantial Injury to Others

The Court disagrees with Honeedew that a "brief" stay will not substantially injure other parties.  (Stay Mot., Dkt. 6-1, at 24.)  "As the party seeking a stay pending appeal, [Honeedew] bears the burden of proving that the Trustee will not suffer substantial injury if a stay is granted." *In re Atkinson*, No. 12-BK-74366 (AST), 2012 WL 6138217, at *5 (Bankr. E.D.N.Y. Dec. 11, 2012).  Honeedew's contention that the Property is "not perishable, time-sensitive, or subject to imminent value collapse" is not supported by the record.  (Stay Mot., Dkt. 6-1, at 23–24.)  As the Trustee has repeatedly stated, the delay in selling the property and consummating the sale has imposed financial burdens on the estate, such as "insurance and maintenance and visitation" costs. (03/10/2026 Hr'g Tr., Dkt. 7-24, at 71–72; Aiello Decl., Dkt. 14, ¶ 3.)  Nor can Honeedew show that the Property's value is not at risk of being threatened: the Trustee attempted to market the Property for over one year, initially listing it at $1.5 million, but ultimately receiving only one offer of $900,000.  (03/10/2026 Hr'g Tr., Dkt. 7-24, at 84–85; Declaration of Eric Huebscher ("Huebscher Decl."), Dkt. 7-30, ¶¶ 36, 45 (describing marketing and offer).)  This offer is also not guaranteed to survive a delay: the Purchaser has threatened to withdraw if closing is not timely

consummated, (*see* Aiello Decl., Dkt. 14, ¶¶ 5, 51, 93; 05/08/2026 Hr'g Tr., Dkt. 7-26, at 82; 05/11/2026 Hr'g Tr., Dkt. 7-27, at 73), leaving the very real prospect of no buyer at all.  Moreover, the Trustee asserts, "[i]f the sale is not approved, there is a risk that the [Property's] condo association, the only secured creditor on the [P]roperty[,] will move [before] the Argentine Court to sell the [P]roperty at auction, which will not only significantly delay the sale process or the liquidation of this asset, but . . . will also seriously jeopardize the value of the [P]roperty." (03/10/2026 Hr'g Tr., Dkt. 7-24, at 28, 87, 93; 05/11/2026 Hr'g Tr., Dkt. 7-27, at 73; *see also* Huebscher Decl., Dkt. 7-30, ¶¶ 13, 56 (attesting to this pressure).)  In short, staying the Sale Order would cause harm to the estate and a large asset of the estate.  Honeedew does not acknowledge— and therefore does not contest—these facts, many of which have been found to support substantial injury in other cases.[6]  *See In re Am. Land Acquisition Corp.*, No. 12-BK-76440 (AST), 2013 WL 2481534, at *8 (Bankr. E.D.N.Y. June 10, 2013) (finding that a bankruptcy estate "will likely be harmed by the issuance of a stay because the [purchaser] may elect to cancel the contract, which would cause the Estate to suffer substantial harm and would deprive the estate of its apparently

---

[6] Although Honeedew asserts that a "modest" cash deposit would mitigate these risks, (Stay Mot., Dkt. 6-1, at 24), Honeedew has not identified a specific amount it would pay while the appeal is pending.  *See In re 473 W. End Realty Corp.*, 507 B.R. at 508 (finding appellant's failure to provide the "specific amount it is able to pay" while the appeal is pending relevant to determining injury to party opposing stay); *In re Altman*, 230 B.R. 17, 21 (Bankr. D. Conn. 1999) (finding failure to propose or consent to posting a bond weighed against a stay, but making this finding under the "public interest" factor).  Were the Court to impose bond, it would likely set the amount at or above the $900,000 sale price of the Property, which is far from "modest."  *See In re Sakon*, No. 19-BK-21619 (JJT), 2023 WL 4687974, at *6 (Bankr. D. Conn. July 21, 2023) (explaining that if stay pending appeal is likely to harm other parties' interests, "the court should set a bond at or near the full amount of the potential harm to the non-moving parties" such as at the value of the bid for the property being sold (quoting *In re Adelphia*, 361 B.R. at 350, 368)).  Given Honeedew's seeming unwillingness to pay this amount, the Court finds that a bond would not rectify the harms posed to other parties, such as creditors and the debtors.  Even if such a bond would rectify these harms, the Court would find this factor substantially outweighed by the other factors counseling against a stay.

most valuable asset" (internal quotation marks omitted)); *In re Rudnick*, 336 B.R. 602, 604 (Bankr. D. Mass. 2006) (denying a stay because, among other reasons, "should the sale be stayed, the estate would likely lose the offer and a substantial measure of the equity it would generate"). Accordingly, the Court finds that Honeedew has not met its burden of demonstrating that there would not be substantial injury to other parties.

## IV.      Honeedew Has Not Demonstrated Substantial Possibility of Success on Appeal

A "substantial possibility" of success is an "intermediate level between 'possible' and 'probable' and 'is intended to eliminate frivolous appeals.'" *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 683 (Bankr. S.D.N.Y. 2016) (quoting *In re 473 W. End Realty Corp.*, 507 B.R. at 501). A showing of "substantial possibility" of success is "inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay." *In re Adelphia*, 361 B.R. at 349 (alteration in original) (citation omitted). Generally, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* (quoting *LaRouche v. Kezer*, 20 F.3d 68, 72–73 (2d Cir. 1994)).

As a threshold matter, Honeedew does not specify the requisite standard of review to determine success on appeal for the vast majority of its arguments, much less the relevant legal context. This failure alone is grounds to find that Honeedew has not met its burden of showing that the stay should be granted. *Cf. In re Frantz*, 534 B.R. 378, 386 (Bankr. D. Idaho 2015) ("An appellant's likelihood of success on appeal depends in large part on the standard of review."); *Carter v. Genesis Alkali LLC*, No. 23-8079, 2024 WL 4491802, at *3 (10th Cir. Oct. 15, 2024) (affirming "district court's conclusion that [appellant] had not carried his burden of establishing a likelihood of success on the merits" where the appellant failed to "address the legal standard for obtaining a stay"), *cert. denied*, 145 S. Ct. 2740 (2025); *Athos Overseas Ltd. Corp. v. YouTube,*

*Inc.*, No. 21-CV-21698 (DPG) (EGT), 2024 WL 3431912, at *3 (S.D. Fla. May 2, 2024) (compiling cases denying motions for a stay due to lack of legal support), *report and recommendation adopted*, No. 21-CV-21698 (DPG) (EGT), 2024 WL 3425763 (S.D. Fla. July 16, 2024); *In re Republic Airways Holdings Inc.*, No. 16-CV-3315 (KBF), 2016 WL 2621990, at *8 (S.D.N.Y. May 6, 2016) (determining movant did not show "sufficiently serious questions going to the merits of its appeal" where it failed to "discuss the legal principles in the necessary detail to persuade th[e] Court"). Nonetheless, the Court clarifies here that, a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "Although not specified by [S]ection 363, the Second Circuit requires that transactions under [S]ection 363 be based on the sound business judgment of the debtor or trustee." *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (collecting cases). "Once a court determines that a sound business justification exists, the court must determine whether (i) the debtor has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith." *Id.* Additionally, "the Trustee carries the burden of showing that cause exists to sell the property free and clear of interests." *In re Woldeyohannes*, 665 B.R. 543, 567 (Bankr. D. Conn. 2024), *appeal dismissed*, No. 3:24-CV-1590 (KAD), 2025 WL 1696209 (D. Conn. June 17, 2025). A trustee may sell this property "free and clear of any interest in such property of an entity other than the estate" only if: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f). "The standard

11

of review on an appeal of an order approving a sale is abuse of discretion." *See In re Frantz*, 534 B.R. at 386. "A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record." *Id.*

Here, Honeedew presents six reasons why its challenge to the Bankruptcy Court's Sale Order presents a substantial possibility of success. First, Honeedew argues that the Bankruptcy Court's finding under Section 363(f)(4), that Honeedew's interest in the Property was in bona fide dispute, rested on a finding that was not yet final. (Stay Mot., Dkt. 6-1, at 9–10.) That finding was rendered in the Bankruptcy Court's "Memorandum Decision," which, as noted, Honeedew separately appeals. Second, Honeedew asserts that international comity, *lex rei sitae*, and other doctrines required the Bankruptcy Court to satisfy several conditions before selling the Property. (*Id.* at 13–15.) Third, Honeedew argues that the Bankruptcy Court lacked an evidentiary basis to find that the sale had a good faith purchaser. (*Id.* at 15–18.) Fourth, Honeedew contends that the Bankruptcy Court's sale confirmation process violated procedural and substantive due process. (*Id.* at 18–21.) Fifth, Honeedew asserts that the Bankruptcy Court improperly denied a 14-day automatic stay. (*Id.* at 21–22.) Sixth, Honeedew claims the Bankruptcy Court's finding of waiver and equitable estoppel was erroneous. (*Id.* at 10–13.) For the following reasons, the Court finds that Honeedew has not shown a substantial possibility of success on the merits.

### A.    Bankruptcy Court's Reliance on a "Not Final" Finding

The Court does not find that Honeedew has met its burden of showing a serious legal question as to the Bankruptcy Court's reliance on a "not final" finding. (Stay Mot., Dkt. 6-1, at 9–10.) Section 363(f)(4) provides that a trustee may sell a property free and clear of any interest if the interest "is in bona fide dispute." At hearings on March 10, 2026 and May 11, 2026, the Bankruptcy Court made a finding pursuant to Section 363(f)(4) that Honeedew's interest in the

Property was in bona fide dispute.  (05/11/2026 Hr'g Tr., Dkt. 7-27, at 83, 88 (finding that Honeedew's objection under Section 363(f) was "no longer relevant because [the Bankruptcy Court] determined that Honeedew is not a secured creditor" and that, "to the extent, if any [the Bankruptcy Court was] incorrect, the [Section] 363(f) objection would still fail because . . . there must be an objective basis for the dispute and – and that's the case here"); *see also* 03/10/2026 Hr'g Tr., Dkt. 7-24, at 83 (explaining, that, under Section 363(f), "I don't have to resolve the dispute.  I just have to find that there is a dispute and there is a dispute").)  Honeedew argues that this finding does not satisfy Section 363(f)(4) because the "objective basis" for finding a bona fide dispute must be set forth in a "final, separately appealable order" prior to the sale of the property, (Stay Mot., Dkt. 6-1, at 10); *see also In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 714 (Bankr. S.D.N.Y. 2007) (explaining that a bona fide dispute exists where "there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt" (quoting *In re BDC 56 LLC*, 330 F.3d 111, 117 (2d Cir. 2003), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156, (2d Cir. 2010))).  However, Honeedew has no authority for this proposition, nor any basis for the Court to conclude that the Bankruptcy Court's oral recitation of the "objective basis" for its finding of a bona fide dispute, which was stated on the record at the March 10, 2026 hearing and the May 11, 2026 hearing[7] is legally insufficient.  (Stay Mot., Dkt. 6-1, at 10.)

## B.    Bankruptcy Court's Good-Faith Finding

The Court also finds that Honeedew cannot show a substantial possibility of success as to its claim that the Bankruptcy Court's finding—that Noseda was a good faith purchaser under Section 363(m)—lacked an evidentiary basis.  "The Bankruptcy Court's finding of good

---

[7] The Sale Order states that "based on the record of the hearings on the Claim Objection, there is a bona fide dispute as to the extent, validity, and enforceability of Honeedew's alleged Liens on the Property."  (Sale Order, Dkt. 1, at ECF 9.)

faith . . . is either a factual question or mixed question of fact and law that must be reviewed for clear error." *In re MSR Resort Golf Course LLC*, No. 13-CV-2448 (KPF), 2014 WL 67364, at *6 (S.D.N.Y. Jan. 7, 2014) (quoting *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*, 610 F.3d 44, 51–52 (2d Cir. 2010)).   If a valid business justification exists for a sale, "then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction." *In re MF Glob. Inc.*, 467 B.R. at 730; *In re Kaspar*, No. 22-BK-10382, 2024 WL 4797909, at *5 (Bankr. S.D.N.Y. Nov. 14, 2024) (same), *aff'd*, No. 24-CV-9314 (JMF), 2025 WL 1784812 (S.D.N.Y. June 27, 2025).   A good faith purchaser is one who "purchases the assets for value, in good faith and without notice of adverse claims." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)).   The "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *Id.*

Honeedew contends that there was no evidence to support the Bankruptcy Court's finding of good faith because there was no testimony from the Purchaser and no evidence as to who the ultimate purchaser would be. (Stay Mot., Dkt. 6-1, at 16.)   Honeedew, however, identifies no requirement that the purchaser testify, nor that the ultimate purchaser, if any, be identified to find good faith. *See generally In re Magnesium Corp. of Am.*, 571 B.R. 534, 540–41 (S.D.N.Y. 2017) (affirming finding of good faith without relying on any such evidence).   Moreover, the Trustee *did* offer evidence of good faith, and the Bankruptcy Court relied on this evidence in finding good faith.   The Trustee and the broker agent, Carolina Dumais, who "conducted the day-to-day activities of marketing the [P]roperty for sale," testified.   (05/11/2026 Hr'g Tr., Dkt. 7-27, at 79.)

The Trustee and Dumais testified that, despite marketing the Property for approximately one year, only one offer was received for $900,000. (05/08/2026 Hr'g Tr., Dkt. 7-26, at 24, 49; Huebscher Decl., Dkt. 7-30, ¶¶ 36, 42, 45; Declaration of Carolina Dumais ("Dumais Decl."), Dkt. 7-31, ¶¶ 12–13.) The Trustee, relying on his past and current agent, testified that the Purchaser, who owned property in the same complex, was informed of the sale by the Property's house cleaner or doorman. (05/08/2026 Hr'g Tr., Dkt. 7-26, at 78–79, 87.) The Trustee confirmed that the Purchaser attested that there was no continuity of enterprise between the Purchaser and the debtors. (*Id.* at 89, 91.) Indeed, the Sale Contract precluded the Purchaser from assigning the Property without the Trustee's consent, (Dkt. 7-8, at ECF 22), further guarding against any relationship or collusion between the Purchaser and the Abadis. This kind of evidence, coupled with the absence of evidence evincing bad faith, is routinely relied upon to authorize sales under Section 363.[8]

Honeedew's collateral attacks on the Bankruptcy Court's good-faith finding are unconvincing. Honeedew argues that the Bankruptcy Court's good-faith finding was erroneous because Noseda never paid a "Qualifying Deposit." (Stay Mot., Dkt. 6-1, at 17.) The Qualifying Deposit was a condition in the Amended Sale Procedures that obligated a buyer to deposit 5% of the proposed purchase price. (Am. Sale Procedures, Dkt. 7-7, at ECF 2.)[9] Again, Honeedew has

---

[8] *See In re Kaspar*, 2024 WL 4797909, at *4–6 (relying on affidavit attached by agent who advertised the property in support of finding of good faith and finding that there was "no evidence of bad faith, self-interest, or gross negligence"); *In re CPJFK, LLC*, 496 B.R. at 306 (relying on testimony from agent conducting sale that "there was no interference or involvement by . . . any other party in the marketing process, nor any evidence of any 'fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale'" to support finding of bad faith (citation omitted)); *see also In re Magnesium Corp.*, 571 B.R. at 541 ("[C]ourts in this district have repeatedly relied on the lack of any evidence of bad faith when affirming a good faith purchaser finding." (collecting cases)).

[9] For a purchase price of $900,000, the Qualifying Deposit would amount to $45,000. Noseda deposited $10,000. (Stay Mot., Dkt. 6-1, at 17; 05/11/2026 Hr'g Tr., Dkt. 7-26, at 81.)

not identified any *legal error* based on the non-fulfillment of this condition that undermines the Bankruptcy Court's good-faith finding.[10]  And, in making this argument, Honeedew *entirely fails to acknowledge* that the Trustee had "the right to modify these Amended Sale Procedures at any time." (*Id.* at 7.)  Honeedew's next argument—that the Trustee failed to timely acknowledge that its broker, ReMind Group, had disaffiliated from its partner, Christie's International Real Estate, and that a former broker, Maria Fernanda Canals, had deactivated her real-estate license, (Stay Mot., Dkt. 6-1, at 17–18; 05/08/2026 Hr'g Tr., Dkt. 7-26, at 23, 25, 154)—also fails to articulate any legal basis for finding error in the Bankruptcy Court's good-faith finding.  Moreover, Honeedew fails to make clear how these alleged changes bear on whether the *purchaser* acted in good faith.  In sum, Honeedew's conclusory arguments, devoid of supportive caselaw, fall well short of meeting Honeedew's burden of showing a substantial possibility of success on appeal.

C.     **International Comity**

The Court is similarly unconvinced by Honeedew's argument that the Bankruptcy Court abused its discretion by failing to (i) "apply[] Argentine substantive law, (ii) on a competent foreign-law record under [Federal Rule of Civil Procedure] 44.1, and (iii) with appropriate regard for whether the resulting U.S. order will even be recognized in the situs forum." (Stay Mot., Dkt. 6-1, at 13–15.)  Again, Honeedew provides little to no legal support for this argument.  The cases to which Honeedew cites appear wholly irrelevant. (*Id.*)  *Pravin Banker Associates, Ltd. v. Banco*

---

[10] The "Qualifying Deposit" requirement does not appear to be statutory.  Although the Bankruptcy Code has not defined "good-faith purchaser," as noted, courts have traditionally defined it as "one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Gucci*, 126 F.3d at 390 (citation omitted).  Honeedew only mentions, in passing, that the Purchaser had "actual notice" of Honeedew's objections. (Stay Mot., Dkt. 6-1, at 16.)  But "[t]here is a difference . . . between simply having knowledge that there are objections to the transaction and having knowledge of an adverse claim." *In re Cooper*, 592 B.R. 469, 483 (S.D.N.Y. 2018) (quoting *In re TMT Procurement Corp.*, 764 F.3d 512, 522 (5th Cir. 2014)).

16

*Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997), concerned a stay of proceedings pending resolution of Brady Plan[11] negotiations with creditors, factual circumstances wholly inapposite to this appeal. *Matter of Papeleras Reunidas, S.A.*, 92 B.R. 584 (Bankr. E.D.N.Y. 1988), concerned ancillary proceedings to *foreign* insolvency proceedings. And *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), concerned Hague Convention procedures in discovery. Absent compelling legal support that the Bankruptcy Court's failure to apply Argentine law was legal error, Honeedew's general invocations of international comity ring hollow and are unpersuasive.

### D.      Due Process

The Court also finds that Honeedew has not shown a substantial possibility of a successful due process claim. Honeedew recites a litany of alleged procedural defects: (1) the Bankruptcy Court denied a motion in *limine* that sought to preclude "425 Spanish-language audio/video files, 276 image or paper files, and a privilege log of approximately 90 entries" that the Trustee had provided "within days" of the sale confirmation hearings; (2) the Bankruptcy Court decided the waiver issue—*i.e.*, that Honeedew had waived its argument that their claims against the Abadis should be reclassified as secured—without full briefing; and (3) Honeedew had no opportunity to litigate proxy-execution relief, a provision in the Sale Order providing that "if a lien claimant does not deliver executed releases before closing, the Trustee and the purchaser [were] authorized to execute and file releases on behalf of that claimant." (Stay Mot., Dkt. 6-1, at 19–20.) Because these objections rest on mischaracterizations of the record, the Court finds them meritless. *See In*

---

[11] The Brady Plan was "announced by then United States Secretary of the Treasury Nicholas Brady in March of 1989" encouraged banks to "(1) to reduce the foreign countries' debt burdens; (2) to restructure old debts; and, (3) as before, to provide additional loans." *Pravin*, 109 F.3d at 852–83.

*re Cath. Sch. Emps. Pension Tr.*, No. 18-BK-00108 (ESL), 2018 WL 1577704, at *4 (Bankr. D.P.R. Mar. 28, 2018) ("Misshaping the [bankruptcy] court's ruling and the facts upon the court's consideration do not constitute 'substantial possibility of success on the merits' that may warrant a stay of the proceedings pending appeal.").

*First,* Honeedew mischaracterizes the Bankruptcy Court's motion in *limine* ruling. Contrary to Honeedew's argument, the Bankruptcy Court did not deny the motion based on a finding that Honeedew could pursue its claim in Argentina, (Stay Mot., Dkt. 6-1, at 19), but rather because Honeedew "didn't include the transcript" relevant to its motion, failed to provide "the actual basis in law as to why what [it was] asking for should be granted," and failed to indicate what it was even asking for. (05/07/2026 Hr'g Tr., Dkt. 7-25, at 32–33.) The Bankruptcy Court stated that it would "absolutely consider [the] motion" if Honeedew "fix[ed]" those errors. (*Id.*) Thus, Honeedew was plainly afforded process to challenge the Trustee's purportedly late production, but chose not to avail itself of that opportunity—which does not show a substantial possibility of a successful due process challenge.

*Second*, Honeedew misstates the record when it asserts that the Bankruptcy Court's finding of waiver "became dispositive without full briefing," or, more relevantly, an opportunity to be heard. (Stay Mot., Dkt. 6-1, at 19.) Honeedew was able to file an opposition brief to the Trustee's motion to reclassify its claims on March 3, 2026, (*see* Dkt. 7-9), and to further present oral argument against the Trustee's motion on March 10, 2026, (*see* 03/10/2026 Hr'g Tr., Dkt. 7-24, at 11–20.) In addition, although Honeedew conveniently omits this in their current motion, the Bankruptcy Court gave Honeedew an opportunity during the May 7, 2026 hearing to re-argue the waiver and equitable estoppel issue, and asked Honeedew to provide "other cases" in support of its position. (05/07/2026 Hr'g Tr., Dkt. 7-25, at 16–17.) Indeed, when Honeedew's counsel could

18

not "recall the names of the cases" it had identified to challenge the Bankruptcy Court's finding of waiver and equitable estoppel, the Bankruptcy Court gave Honeedew an opportunity to submit a list of cases after the day's hearing. (*Id.* at 17–18 ("If you want to tonight, . . . just have a list of cases you want me to look at that weren't in your brief that - then I'll – I'll look at the cases.").) However, Honeedew declined to do so due to the "expedited . . . schedule" for confirming the sale. (*See id.* at 18–19.) In short, Honeedew was given notice and opportunity to be heard again on an issue, yet, again, failed to avail itself of that opportunity—which does not support a due process challenge.

*Third*, the record belies any notion that Honeedew was unable to contest the Sale Order's "proxy execution." The Trustee's motion to sell the Property ("Sale Motion"), which was filed on December 10, 2024, included the following "proxy execution" language:

> If any person or entity which has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Liens on the Property shall not have delivered to the Trustee prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Property, the Trustee is hereby authorized and directed upon closing, and the Designated Purchaser is hereby authorized upon closing, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Property. Except as otherwise provided herein, upon closing of the Sale of the Property, each of the Debtors' creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Liens against the Property.

Proposed Sale Order, *In re Abadi*, No. 24-42873 (JMM) (Bankr. E.D.N.Y. Dec. 10, 2024), Dkt. 114-5, ¶ 11; (Sale Mot., Dkt. 7-3, at 3 (noting that the Sale Order was attached)).[12] The Sale

---

[12] Honeedew notably omits this document in the record submitted with this Motion. (*See* Sale Mot., Dkts. 7-3, 7-4, 7-5.) Honeedew was required to submit *all relevant parts of the record* to its Motion, *see* Fed. R. Bankr. P. 8007(b)(3); it may not ignore or omit contrary evidence in the record. This omission is grounds alone to deny Honeedew's Motion to Stay. However, the Court

Motion also gave notice that the Trustee intended to sell "free and clear of all liens, claims, encumbrances, and interests." (Sale Mot., Dkt. 7-4, at 14.) Objections to the Sale Motion were due on January 7, 2025, (Sale Mot., Dkt. 7-3, at 1), and there is no indication that Honeedew raised objections to the "proxy execution" language at any point between January 7, 2025, and the sale's consummation in May 2026. To the extent Honeedew takes issue with the language of the Sale Order barring interference with the closing or the above-quoted provision authorizing the Trustee to execute releases on behalf of all debtors' creditors, (Stay Mot., Dkt. 6-1, at 20), the Court finds that this language is common and unproblematic, *see, e.g.*, *In re Metro Affiliates*, No. 13-BK-13591, 2011 WL 13491899, at *6 (Bankr. S.D.N.Y. Apr. 20, 2011); *In re Visteon Corp.*, No. 09-BK-11786 (CSS), 2010 WL 11808287, at *6 (Bankr. D. Del. Jan. 20, 2010), particularly where, as here, Honeedew had ample opportunity to object in advance of the sale but did not.

### E.    Bankruptcy Court's Denial of Automatic Stay

The Court is also not persuaded by Honeedew's argument that the Bankruptcy Court abused its discretion by denying a 14-day automatic stay under Rule 6004(h). Rule 6004(h) provides that "*[u]nless the court orders otherwise*, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h) (emphasis added). The purpose of Rule 6004(h) is to permit "sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale, or lease of property under [Section] 363(b) of the Code before the order is implemented." *In re Fisherman's Pier, Inc.*, 460

---

takes judicial notice of documents in the Bankruptcy Court's docket, even if not part of the record that Honeedew has provided, to resolve the Motion. *Cf. Gewirtzman v. Markowitz*, 646 B.R. 604, 607 (S.D.N.Y. 2022) ("The Court may take judicial notice of the bankruptcy docket, and documents on the docket not included in Appellant's designation of the record on appeal, including hearing transcripts." (citation omitted)), *aff'd sub nom. In re Mosdos Chofetz Chaim Inc.*, No. 22-2926, 2023 WL 6532954 (2d Cir. Oct. 6, 2023).

F. Supp. 3d 1345, 1354 (S.D. Fla. 2020) (citation omitted).  As indicated in the Rule, the bankruptcy court has the authority not to impose the 14-day stay, and that decision is reviewed for abuse of discretion.  *See* Fed. R. Bankr. P. 6004(h); *Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) (finding that the bankruptcy court did not abuse its discretion by not imposing a Rule 6004(h) stay).  Here, the Court finds that, in light of the exigent circumstances of this case, including the risk that the Purchaser would exit the transaction, leaving no buyer for the Property, as well as Honeedew's lack of meritorious arguments, the Bankruptcy Court did not abuse its discretion in dispensing with the automatic stay.  *See Hower*, 445 F.3d at 938 (finding no abuse of discretion in light of "exigent circumstances" of the estate requiring sale proceeds and appellant's "slim chance of prevailing on appeal").

F.      **Bankruptcy Court's Memorandum Decision**

The Court finds that Honeedew has not shown a substantial likelihood of success as to the Bankruptcy Court's conclusions in the Memorandum Decision.  Honeedew provides no relevant case law to support the argument that the Bankruptcy Court's reliance on waiver to reclassify Honeedew as an unsecured creditor, instead of determining whether Honeedew had a valid interest in the Property, was erroneous.  (*See* Stay Mot., Dkt. 6-1, at 10–12.)  Tellingly, Honeedew does not contest the factual basis for the Bankruptcy Court's finding of waiver, nor does it engage with the authorities that the Bankruptcy Court cited in support of its decision, (03/10/2026 Hr'g Tr., Dkt. 7-24, at 39–40 (citing *In re Russo*, 18 B.R. 257, 270 (Bankr. E.D.N.Y. 1982); *In re Concepts Am. Inc.*, 621 B.R. 848 (Bankr. N.D. Ill. 2020))).  These cases support the conclusion that Honeedew, by voting "as an unsecured creditor in the election of the trustee . . . [,] waived whatever secured creditor status [it] may have had." *In re Russo*, 18 B.R. at 270; *In re Concepts Am., Inc.*, 621 B.R. at 861 (finding that "filing a proxy to vote in the trustee election" supported waiver of status as secured creditor because it is "conduct inconsistent with an intent to enforce

21

[the] right to be a secured creditor"). Many other cases have held the same or similar.[13] Because the Bankruptcy Court relied on waiver *and* equitable estoppel to preclude Honeedew from asserting a secured claim, (*see* Memorandum Decision, Dkt. 7-2, at 10–11; *see also* 03/10/2026 Hr'g Tr., Dkt. 7-24, at 45), to the extent the Bankruptcy Court's equitable estoppel conclusion rested on contradictory findings, (*see* Stay Mot., Dkt. 6-1, at 12–13),[14] any error was harmless.

## V.    Public Interest Weighs Against a Stay

The Court finds that the public interest weighs against granting a stay pending appeal. Although meaningful appellate review is certainly a valid public interest, *see In re Adelphia*, 361 B.R. at 367 (providing that there is "significant public interest in vindicating the rights of the minority and preventing the will of the majority to go unchecked by appellate review"), the Court finds this interest diminished by Honeedew's inability to show a substantial possibility of success on the merits. Moreover, the public also holds an interest in "expeditious administration of

---

[13] *See Matter of Lindell Drop Forge Co.*, 111 B.R. 137, 146 (Bankr. W.D. Mich. 1990) ("[I]f a secured creditor desires to participate in the election of a chapter 7 trustee, it may waive or limit the amount of the secured portion of its claim."); *Liddle & Robinson, L.L.P. v. Daley* (*In re Daley*), 224 B.R. 307, 312 (Bankr. S.D.N.Y. 1998) ("It has long been the law that where a creditor files a claim as unsecured, he waives the right to subsequently assert that claim as secured." (compiling cases)); *In re Michelex Ltd.*, 195 B.R. 993, 1007 (Bankr. W.D. Mich. 1996) ("Fully secured creditors are not unsecured and cannot vote [for a trustee].");  *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 34 (1947) (observing that a secured creditor may "surrender or waive his security and prove his entire claim as an unsecured one").

[14] In its effort to show that the Trustee did not sufficiently considers Honeedew's supporting documentation for its request to reclassify its claim from partially secured to unsecured, Honeedew attaches email chains in which it discussed making a "credit bid" on the Property and making a "Carve Out Agreement." (*See* Stay Mot., Dkt. 6-1. at 11–12.) Credit bids and carve out agreements are available to secured creditors. *See In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578, 592 (Bankr. S.D.N.Y. 2024); *In re Hotel Syracuse, Inc.*, 275 B.R. 679, 683 n.4 (Bankr. N.D.N.Y. 2002), *as corrected* (Mar. 18, 2002). At the March 10, 2026 hearings, the Trustee acknowledged Honeedew's use of this language in its emails, but asserted that Honeedew's "credit bid" language was "certainly not an admission of a security interest. It was a proposal to try to resolve this in a way that benefited all creditors subject to approval." (03/10/2026 Hr'g Tr., Dkt. 7-24, at 28.)

bankruptcy cases," which is "impaired by obstructing a [bankruptcy] trustee's efforts to collect, liquidate and distribute assets to creditors of the estate." *In re Carrington*, 698 F. Supp. 3d at 662 (alteration in original) (citation omitted).  Accordingly, the Court finds that the public interest tips against granting a stay.  *In re Buco*, No. 25-CV-5496 (MMG), 2025 WL 2070767, at *2 (S.D.N.Y. July 23, 2025) ("Where, as here, the 'high standards' for relief have not been demonstrated, 'a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest.'" (quoting *In re 473 W. End Realty Corp.*, 507 B.R. at 508)); *Stewart v. Fed. Nat'l Mortg. Ass'n*, No. 1:24-CV-0730 (BKS), 2024 WL 5077510, at *8 (N.D.N.Y. Dec. 11, 2024) (similar).

### CONCLUSION

In sum, the balance of the factors weighs decidedly against a stay of the Bankruptcy Court's Order for the sale of the debtors' Property.  Accordingly, the Court denies Honeedew's Motion to Stay.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 18, 2026
       Brooklyn, New York